CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JAN 09 2009
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:08CR00026 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WILLIAM TOWNSLEY WADE, JR., | ) | |
| a/k/a "Billy" | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in Count One with knowing and intentionally possessing with intent to distribute, fifty (50) grams or more of methamphetamine (pure), its salts, isomers, and salts of its isomers, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); in Count Two with being an unlawful user of or addicted to a controlled substance as defined in Title 21, United States Code, Section 802, did knowingly possess in and affecting interstate commerce, a firearm, that is an Armscor, Model 1911, .45 caliber pistol., said firearm having been shipped and transported in interstate commerce, all in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2); and in Count Three with knowingly and intentionally possessing with intent to distribute, fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Secctions 841(a)(1) and 841(b)(1)(B).

On January 6, 2009, a plea hearing was conducted before the undersigned, and pursuant to

the terms of the plea agreement[1], the defendant entered a plea of guilty to Count One of the Indictment. At this hearing the defendant was placed under oath and testified his full legal name is William Townsley Wade, Jr., he was born on July 16, 1950, and he received formal education up to twelfth grade. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol or drugs.[2] The defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. The defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein and defenses thereto, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, assurances, or threats in an effort to induce his plea. The defendant testified that he understood that Count One is a felony, and if his plea is accepted, he will be adjudged guilty of that offense, and the government will move for the dismissal of Counts Two and Three of the Indictment.

The defendant was informed that the maximum statutory penalty for Count One is a $4,000,000 fine and/or imprisonment for a term of life, plus a term of supervised release. He was further informed that there is a mandatory minimum sentence of imprisonment for a term of ten

---

[1] In a typographical error, the plea agreement states that it consists of twelve pages. Actually, the plea agreement is only eleven pages.

[2] The defendant testified that he was taking blood pressure medication, but that the medication did not impact his ability to understand the proceedings.

2

years. The defendant was told that parole has been abolished and that if he is sentenced to prison, he will not be released on parole but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count of conviction, or $100.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant acknowledged awareness that all facts set forth in the Indictment, including the dismissed counts, are relevant conduct for purposes of his sentencing. The defendant stated that he understood that the government would not object to his being given the benefit of sentencing under the "safety valve" provisions of USSG § 5C1.2 and Title 18, United States Code, Section 3553, if he meets the criteria at the time of his sentencing. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a

3

two-level (2) reduction under USSG § 3E1.1(a), and if applicable at sentencing, the government will move for an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant stated that he was aware that if he fulfilled his obligations under the plea agreement and accepted responsibility for his conduct, the government would recommend a sentence at the middle of the applicable Guidelines range. The defendant also acknowledged that this was merely a recommendation, and that the court had the discretion to sentence him up to the maximum penalty under the law.

The defendant was informed that any information he gives during a proffer or cooperation will not be used against him to enhance his sentence pursuant to USSG § 1B1.8, but that the information could be used to show he was accepting responsibility. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case. The defendant acknowledged his consent to the abandonment, official use and/or destruction of anything seized by law enforcement officials during the investigation of his case. The defendant stated that he had agreed to pay restitution for the entire scope of his criminal conduct and that he understood a requirement that he pay this restitution would be imposed upon him as part of any final judgment. The defendant agreed that he would make good faith efforts toward payment of any fines, mandatory assessments and restitution imposed. The defendant was informed that, at the discretion of the court, he may be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely. The defendant acknowledged that, if requested, he would be required to submit a financial statement, and he agreed not to convey anything of value without authorization from the government. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated.

The defendant acknowledged that he was waiving his right to have a jury determine beyond

4

a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant stated he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify on his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense; and
7. The right to appeal a guilty verdict.

The defendant testified that he understood that under the terms of the agreement he was waiving rights to appeal or collaterally attack his conviction or sentence. The defendant stated he was aware that the government retained its rights to appeal.

The defendant also testified that he understood that he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel, and that he believed the representation had been effective. After answering all the undersigned's questions, the defendant stated he still wished to plead guilty and have the court to accept his plea of guilty to Count One.

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court, and he had no objection to the Summary.[3] The Factual Summary having been filed in open court, the

---

[3] The Factual Summary contains handwritten deletions which have been initialed by the defendant, his counsel, and the Government.

5

evidence presented therein regarding the offense charged, is as follows: Pursuant to a search warrant obtained from a state magistrate, a residence located at 780 Acorn Drive, Harrisonburg, Virginia 22801, was searched on March 6, 2008. The search warrant was issued with regard to suspected narcotics transactions involving a Frank Wesley Wade, but upon executing the search warrant, only one person was present in the residence, a William T. Wade, Jr., the father of Frank Wade. At the time of the execution of the search warrant William T. Wade, Jr. gave a statement to the officers telling them that his bedroom was located on the first floor and that his son's bedroom was located on the second floor. William T. Wade, Jr. also stated at that time that everything that would be found in his room belonged to him.

Following these statements being given, officers with the RUSH Drug Task Force as well as the WASSP Drug Task Force executed the search warrant. Upon searching the residence, the following items were found in the first floor bedroom that William T. Wade, Jr. stated belonged to him: (I) 8 individually packaged bags of suspected methamphetamine; (II) a set of digital scales; (III) miscellaneous packaging materials; (IV) a cell phone; (V) two glass smoking devices; (VI) a .45 caliber 1911-A1 firearm; (VII) $6190.00 in U.S. currency and; (VIII) a police scanner.

The suspected narcotics were seized, packaged and sent to the DEA Laboratory for forensic analysis. Subsequently, a Laboratory Report was issued by the DEA Laboratory confirming that the substance seized was methamphetamine. The net weight of the methamphetamine seized from Wade's bedroom was 204.8 grams and the purity level of the methamphetamine was 40.7%. Based on the testing done by DEA, it was determined that William T. Wade, Jr. had 83.3 g of actual/pure methamphetamine in his possession.

After completing the search, William T. Wade, Jr. was mirandized by law enforcement personnel and questioned. Mr. Wade confirmed to officers that the first floor bedroom where the narcotics were located was his bedroom. Mr. Wade additionally confirmed that everything inside of the first floor

bedroom belonged to him.

To supplement the government's case with regard to Mr. Wade's intent to distribute, the government would also present evidence that on 8/05/08 agents with the RUSH Drug Task Force met with a confidential informant (CI) who told the agents that he had been purchasing amounts of methamphetamine from a guy named "Billy" on a weekly basis. Based on the description of "Billy" and his vehicle given by the CI, it was determined that the target was William T. Wade, Jr.

On the same evening, the CI placed a recorded phone call to William T. Wade, Jr. wherein Wade agreed to sell methamphetamine to the CI. During the conversation, it was learned that Mr. Wade would arrive at the CI's residence within the hour. Subsequently, surveillance was conducted on Mr. Wade and agents with the RUSH Drug Task Force observed Mr. Wade leave the Harrisonburg Eagle's Lodge and proceed to his home. After a brief time inside of the home, Mr. Wade returned to his vehicle and headed toward the CI's location. As Mr. Wade approached the CI's location, agents stopped Mr. Wade's vehicle.

Inside the vehicle driven by Mr. Wade, officers located the following: (I) five individually wrapped baggies containing suspected methamphetamine; (II) 2 sets of digital scales; (III) miscellaneous packaging materials; (IV) a Verizon cell phone and; (V) $900.00 in U.S. currency.

The suspected narcotics were seized, packaged and sent to the DEA Laboratory for forensic analysis. Subsequently, a Laboratory Report was issued by the DEA Laboratory confirming that the substance seized was Methamphetamine. The net weight of the methamphetamine seized from Wade's vehicle was 104.6 grams.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

7

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for April 16, 2009 at 10:00 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

Jan 9, 2009
Date